**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| UNITED STATES<br>v.<br>ANDRE NOBLE | Civil Action No.<br>1:23-cr-00165-SDG |
|---|---|

**OPINION AND ORDER**

This matter is before the Court on Defendant Andre Noble's motion to withdraw his plea of guilty to aggravated identity theft [ECF 11]. For the following reasons, Noble's motion is **GRANTED**.

## I. BACKGROUND

Noble pleaded guilty to a two-count criminal information on May 18, 2023, for his participation in COVID-19 small-business-loan fraud.[1] The government originally indicted Noble on ten counts for wire fraud, wire fraud conspiracy, and aggravated identity theft.[2] After negotiations, Noble agreed to instead plead guilty to the two-count information, which charged him with one count of theft of government funds and one count of aggravated identity theft, the latter under 18 U.S.C. § 1028A.[3]

1 ECF 4.

2 ECF 1, *United States v. Mays*, *et al.*, No. 1:22-cr-343-SDG-JKL-2 (N.D. Ga. Sept. 9, 2022).

3 ECF 1.

At the plea hearing, the government provided (in summary) the following factual basis: Noble, with co-conspirator Quinn Mays, submitted fraudulent applications for COVID-19 small business loans, and for cash advances on those loans.[4] The applications were prepared using other people's names, and misrepresented facts about their (real or purported) businesses.[5] The fraudulent applications caused the disbursement of at least $210,000 in federal funds.[6] In one particular case, Noble and Mays submitted a loan application using the personal information of someone with initials O.O. and containing many material falsehoods about O.O.'s business.[7] On the basis of these facts, the Court accepted Noble's guilty plea for aggravated identity theft.[8]

Then, on June 8, 2023, three weeks after the plea hearing, the Supreme Court narrowed the scope of aggravated identity theft under § 1028A in *Dubin v. United States*. 599 U.S. 110 (2023). On June 26, Noble filed a *pro se* motion to withdraw his guilty plea.[9] On November 1, he refiled with the assistance of court-appointed

---

4 ECF 12-1, at 14–15.

5 *Id.* at 14.

6 *Id.* at 15.

7 *Id.*

8 *Id.* at 28.

9 ECF 7.

counsel, arguing that *Dubin* has rendered the factual basis for his plea insufficient for conviction.[10]

## II. DISCUSSION

### A. Legal Standard for Plea Withdrawal

Under Fed. R. Crim. P. 11(d)(2)(B), a court may allow a criminal defendant to withdraw his guilty plea, prior to sentencing, if the defendant shows a "fair and just reason." Though Rule 11(d)(2)(B) does not grant an "absolute right," it is to be "liberally construed" in accordance with the district court's discretion. *United States v. Buckles*, 843 F.2d 469, 471 (11th Cir. 1988). Courts must consider the "totality of circumstances," including (1) the availability of counsel; (2) the knowing and voluntary nature of the plea; (3) conservation of judicial resources; and (4) prejudice to the government. *Id.* at 472. Under Rule 11, the factual basis for a guilty plea is sufficient if it presents the trial court "with evidence from which it could reasonably find that the defendant was guilty." *United States v. Lopez*, 907 F.2d 1096, 1100 (11th Cir. 1990).

### B. *Dubin* Rendered the Factual Basis for Noble's Plea Insufficient to Convict Him of Aggravated Identity Theft.

Noble seeks to withdraw his plea of guilty to aggravated identity theft, which under § 1028A occurs when someone "uses, without lawful authority, a

[10] ECF 11.

means of identification of another person," in connection with a list of predicate felonies. 18 U.S.C. § 1028A(a)(1). *Dubin* imposed limits on this potentially "boundless" provision by holding that it only applies when the misuse of another's identity is "at the crux" of the predicate felony. 599 U.S. at 114. But applying *Dubin* to a specific case is no easy task. *Id.* at 138 (Gorsuch, J., concurring).

Clearly, after *Dubin*, not all fraud involving another's identity constitutes aggravated identity theft; somewhere there is a line. On one side, the means of identification is crucial to the predicate offense; on the other side it is "ancillary." *Id.* at 114. On one side, identity is "central"; on the other side it is peripheral. *Id.* at 123. On one side, a "genuine nexus" exists between identity and fraud; on the other side the two are more disconnected. *Id.* at 117.

Less clear is where exactly the line should be drawn as applied to a particular case. Noble argues that *Dubin* established a broad rule: no conviction can be had under § 1028A unless another's identity has been "stolen or misappropriated."[11] The government responds that *Dubin*'s narrow, fact-bound holding applies only when a defendant has overbilled for legitimate services.[12] The parties' positions differ significantly: they cannot both be right. Yet under *Dubin*, neither is obviously wrong.

---

11 *Id.* at 6–7.

12 ECF 12, at 14.

Of course, the Court does not interpret *Dubin* in a vacuum: the Eleventh Circuit provided additional guidance in *Gladden v. United States*. 78 F.4th 1232 (11th Cir. 2023). As the Court reads *Dubin* and *Gladden* in conjunction with one another, aggravated identity theft occurs when (1) a defendant misuses a means of identification and (2) the misuse is material to the predicate offense. Because the government's factual basis in this case failed to establish that Noble misused O.O.'s means of identification in a manner that was material to the business-loan fraud, it is insufficient to sustain Noble's conviction for aggravated identity theft.

*Dubin* was a Medicaid overbilling case. The defendant, Dubin, helped manage a psychological services company. 599 U.S. at 114. The company submitted a Medicaid reimbursement claim for a test performed by a licensed psychologist, but the claim was fraudulent: the testing had actually been performed by a psychological *associate*, and on a different date. *Id.* Inflating the tester's qualifications inflated the reimbursement sum. *Id.* And without the date change, the test may not have been eligible for reimbursement at all. *Id.* at 114 n.1.

The Supreme Court nevertheless vacated Dubin's aggravated identity theft conviction because his misuse of the tester's identity was not "at the crux" of his healthcare fraud. *Id.* at 132. The Supreme Court explained that, in cases like *Dubin*, § 1028A requires "the means of identification specifically" to be used "in a manner that is fraudulent or deceptive." *Id.* Dubin had not done so. Instead, where Dubin

had used a specific means of identification—the patient's name and Medicaid reimbursement number, *id.* at 113—the use was an "ancillary feature" of the fraud, *id.* at 132. And where Dubin had acted fraudulently and deceptively—by misrepresenting the tester's qualifications—the action did not involve a specific means of identification. *Id.* Thus, Dubin was absolved of aggravated identity theft.

*Dubin* seems to instruct lower courts to look at two distinct aspects of aggravated identity theft: first, at *what* the defendant uses (a means of identification); second, at *how* the defendant uses it (fraudulently or deceptively). First, because *Dubin* requires the misuse of a means of identification specifically, it behooves courts to determine what means of identification are involved in a given case. *Dubin* teaches that names and identification numbers are means of identification—but it also teaches that professional qualifications are not. The latter conclusion follows from the vacatur of Dubin's conviction despite his misuse of the tester's qualifications. This misuse was "at the crux" of the fraud, but it did not trigger § 1028A because no means of identification specifically were involved.

This focus on a means of identification *specifically* is what *Dubin* "succinctly summarized" as looking at "'who' is involved." *Id.* Dubin's dishonesty went not to the "who" but to the "when" and "how": the test's date, the tester's qualifications. *Id.* Under the same logic, "who" would have also been distinguishable from "what" and "where" and "why" had, for example, the

defendant lied about the kind of testing that had been performed, or at what facility, or for what motive. Focusing on the "who" restricts § 1028A's reach to misrepresentations of facts so personal as to be a part of another's *identity*—and so specific as to function as a means of identification.

Second, where a means of identification is used, courts must ensure that it is used in a way that is fraudulent and deceptive. In a case like *Dubin*, this translates into a requirement that the means of identification be material to the fraud. In other words, the means of identification must matter to the fraud committed. And as the Supreme Court stressed, it must matter a great deal: the means of identification must do more than *cause* or *facilitate* the issuance of funds. *Id.* at 131. In *Dubin*, the patient's name and identification number were not material to the healthcare fraud because they did not influence the government's decision to reimburse a particular sum. A different name and identification number, and the sum would have been the same; the government's decision hinged not on the name and identification number but rather on the tester's qualifications. Far from mattering a great deal, the patient's name and identification number did not matter at all.

The Eleventh Circuit seems to have followed this two-part framework in *Gladden*. *Gladden* reviewed the aggravated identity theft convictions of two defendants, Linton and Gladden, for their respective participation in healthcare

insurance fraud. 78 F.4th at 1238. Linton's conviction was affirmed; Gladden's was vacated. *Id.*

According to *Gladden*, Linton committed aggravated identity theft in two ways. First, Linton altered patient addresses to further a scheme to overbill for prescription medications. *Id.* at 1245. The scheme involved automatically refilling patient prescriptions regardless of medical need. *Id.* at 1239. When patients began to complain about unwanted prescription refills being mailed to their homes, Linton changed those patients' on-file addresses to that of the company owner so that the prescriptions could continue to be refilled. *Id.* These changes were sufficiently personal to be a "forgery of [the patients'] identities," and the forgeries lay "at the heart of the deception," *id.* at 1245—in other words, the patients' addresses were sufficiently specific to constitute a means of identification, and misrepresenting them was material to the predicate insurance fraud. Second, Linton added medications to an existing prescription without the prescribing doctor's knowledge. *Id.* Here, too, Linton effectively forged the doctor's identity by appending his signature to unauthorized prescriptions, and the forged identity was a "key mover in the criminality," *id.* at 1246—in other words, the doctor's signature was sufficiently specific to constitute a means of identification, and misusing it was material to the fraud. Linton's actions thus violated § 1028A. *Id.*

The Eleventh Circuit contrasted Linton's forgeries of patient and doctor identities with Gladden's misrepresentation of a patient's health. *Id.* at 1248. Gladden was convicted of aggravated identity theft after his employee, at Gladden's behest, obtained a medically unnecessary prescription for her twelve-year-old daughter. *Id.* at 1240. The appellate court vacated the conviction, reasoning that neither Gladden nor his employee had fashioned a fraudulent prescription "out of whole cloth": by, for example, forging a doctor or a patient's name. *Id.* at 1249 (quoting *United States v. Michael*, 882 F. 3d 624, 629 (6th Cir. 2018)). Neither had they misrepresented any identifying information: the daughter was who the prescription said she was. *Id.* at 1248. Thus, where Gladden used a means of identification—the daughter's identifying information—that use was not material to the fraud, which instead concerned the prescription's medical necessity. *Id.* That the prescription belonged to the daughter was "merely ancillary;" for purposes of the fraud, one patient was as good as another. *Id.* And where Gladden acted fraudulently and deceptively—by obtaining a medically unnecessary prescription—his actions did not involve a means of identification. He lied, not about the "who," but about the "what" and "why": not about "who received the prescriptions," but about what they were for and why they were necessary. *Id.* His lies constituted fraud, but not aggravated identity theft. *Id.* at 1249.

Under this reading of *Dubin* and *Gladden*, the government's proffered factual basis fails to provide reasonable grounds to conclude that Noble committed aggravated identity theft. Where Noble admitted he used another's means of identification—O.O.'s name, perhaps also her address and various identification numbers—his use of the means of identification was not material to the small-business-loan fraud. Whether the loan application was successful hinged not on O.O.'s identifying information but on her business records. And where Noble acted fraudulently and deceptively—by filing loan applications using "false gross revenues, costs of goods sold, number of employees"[13]—his actions did not involve identity because business records are not a means of identification specific to O.O. The information that Noble misrepresented went not to "who" O.O. was, but to the "what" and the "how": what her business consisted of, and how her business qualified for a loan.

Noble's actions in this case are strikingly analogous to Gladden's. Noble, like Gladden, worked with a co-conspirator (Mays) to fraudulently obtain a benefit for another person (O.O.). Noble, like Gladden, did not fashion a fraudulent loan application out of whole cloth, for example by forging the loan applicant's name.

---

[13] ECF 12, at 4.

Nor did Noble misrepresent any identifying information: O.O. was who the loan application said she was.

Noble's case is so similar to Gladden's that *Gladden*'s analysis can be lifted almost word for word. Changing the names and replacing "medically" and "prescription" with "economically and "loan" yields the following:

> [Noble's] conviction for aggravated identity theft was based on the [loan] that [Mays] obtained for [O.O.].... [T]he [loan] in question was not [economically] necessary.... The deception at the heart of [Mays] and [Noble's] conduct, then, was obtaining [economically] unnecessary [loans]. The use of [O.O.'s] identifying information was merely ancillary to the deception; indeed, at no point did [Mays] and [Noble] misrepresent who received the [loans].
>
> The conduct underlying [Noble's] identity theft conviction is thus distinct from Linton's. While Linton misrepresented who was receiving the prescriptions, [Noble's] misrepresentation . . . involved only whether the [loans] were [economically] necessary.

*Id.* at 1248–49. This Court therefore reaches the same conclusion: Noble's conduct constituted fraud, but not aggravated identity theft. *Id.* at 1249.

In so concluding, the Court must reject the government's reading of *Dubin* as inconsistent with *Gladden*. According to the government, *Dubin* is limited by its facts: it applies where there has been overbilling for "legitimate services"; it does not apply where there is "only fraud."[14] This may be a possible reading of *Dubin*.

[14] ECF 12, at 14.

But the Court cannot square it with *Gladden*, in which a defendant who profited off a spurious prescription for a manufactured malady—no legitimate services, no overbilling, only fraud—was absolved of aggravated identity theft. The government's interpretation seems too narrow for this Circuit.

Better aligned with controlling precedent is Noble's position that § 1028A requires an identity to have been "stolen or misappropriated." In *Gladden*, the Eleventh Circuit specifically noted that Linton used others' identities without their knowledge—in other words, that she stole them—in upholding her conviction for aggravated identity theft: patients were "unaware" that they were being mailed medications; prescriptions were altered "without [the doctor's] knowledge." *Id.* at 1245.

A recent district court decision from this Circuit is also consistent with Noble's position. In *United States v. Sheppard*, a post-*Gladden* case from the Southern District of Florida, the defendant, Sheppard, sought to dismiss his indictment for COVID-19-small-business-loan fraud. 2023 WL 7157874, at *1 (S.D. Fla., Oct. 31, 2023). Sheppard had been charged with aggravated identity theft after submitting fraudulent loan applications using stolen names and forged signatures. *Id.* at *5. The district court ruled that *Dubin* intended § 1028A to apply in exactly such a scenario—where an identity is fabricated "without that other person's knowledge or consent"—and denied Sheppard's motion *Id. Sheppard* supports

Noble's position that the other person's knowledge or consent precludes conviction for aggravated identity theft.

Noble's position is also well-grounded in *Dubin*, and particularly its focus on the "theft" aspect of "aggravated identity theft." For example, *Dubin* inferred from § 1028A's title that the statute applied when "the 'identity' itself has been stolen." *Dubin*, 599 U.S. at 122. It mused that "theft" intuitively entails the taking of something known to belong to someone else. *Id.* at 125. And it cited definitions of identity theft that clearly require information be stolen as an element of the crime. *Id. Dubin* at least suggests the question: How can you be guilty of identity theft if you haven't stolen anyone's identity?

The government responds that, under pre-*Dubin* Eleventh Circuit precedent, § 1028A allowed convictions when the identity in question had been utilized "without lawful authority," even if not stolen.[15] This is true—as is the fact that *Dubin* did not address the scope of the "without lawful authority" clause—but beside the point. If Noble is right and his fraud falls altogether outside § 1028A's conception of "identity theft," then whether he committed fraud "without lawful authority" seems, for purposes of § 1028A, irrelevant.

---

[15] ECF 12, at 16–17.

However, for all its merits, the Court cannot reconcile Noble's position with the reasoning underlying the vacatur of Dubin's and Gladden's convictions. The Supreme Court did not specify in *Dubin* whether the patient knew that the psychological tester's credentials were being falsely inflated. Similarly, the Eleventh Circuit did not specify in *Gladden* whether the twelve-year-old daughter knew fraudulent prescriptions were being filled on her behalf. *Dubin* and *Gladden* did not turn on whether a misused identity was first stolen or misappropriated. Their rationales did not implicate the identity-holder's state of mind. Noble's position that a stolen or misappropriated identity is necessary for a conviction under § 1028A thus fails to completely capture *Dubin*'s and *Gladden*'s holdings.

Nor does the Court believe it makes a distinction without a difference. A defendant might be *absolved* of aggravated identity theft, even if he commits fraud *without* another's knowledge or consent. For example, even if the twelve-year-old daughter knew nothing about Gladden's insurance fraud (as, quite frankly, seems likely to have been the case), the Eleventh Circuit would seemingly have reached the same conclusion because Gladden's use of her identity, even without her consent, still was not at the crux of his fraud.

Similarly, it seems a defendant may be *guilty* of aggravated identity theft despite acting *with* another's express knowledge and consent. Such a fact pattern occurs in *United States v. Jones*, a post-*Dubin* case from the Eastern District of

Virginia. 2023 WL 4672383 (E.D. Va., July 20, 2023). There, the defendant Jones wanted a passport, but his initial application was denied in part because of unpaid child support payments. *Id.* at *1. Jones then reapplied under his brother's "name, date of birth, Social Security number, and Virginia driver's license number." *Id.* The district court held that Jones's indictment for aggravated identity theft was proper, even if the brother had expressly consented to the use of his identity. *Id.* at *5. This Court agrees. Jones used his brother's identity: name and Social Security number are clearly means of identification. And Jones's use of his brother's identity was material to the fraud: Jones needed his brother's clean payment history to be eligible for a passport. Thus, even if Jones proved his brother's knowledge and consent, he could still be convicted of aggravated identity theft.

So too could Noble, regardless of O.O.'s knowledge or consent, if the government can prove that Noble (1) used O.O.'s means of identification (2) in a way material to his loan fraud. Because the factual basis did not so provide, Noble's use of O.O.'s identity was not at the crux of his fraud, and his plea of guilty to aggravated identity theft cannot stand.

**C. A Fair and Just Reason Exists for Plea Withdrawal.**

Having determined, as best it can, that the facts presented at Noble's plea hearing are not a reasonable basis on which to find him guilty of aggravated identity theft, the Court must decide whether he may withdraw his guilty plea as

to that charge. Under Rule 11(d)(2)(B), Noble may withdraw if the Court finds, considering the totality of the circumstances, that a fair and just reason exists for him to withdraw his plea.

As the government rightly points out, the four *Buckles* factors are not in Noble's favor.[16] In fact, Noble barely makes an argument under three of them.[17] And on the factor that Noble does contest—factor two, the knowing and voluntary nature of the plea[18]—he faces serious headwinds in the form of Eleventh Circuit precedent indicating that a subsequent change in law does not render a plea unknowing or involuntary. *E.g.*, *United States v. Finley*, 805 F. App'x 823, 828 (11th Cir. 2020).[19]

---

16 ECF 12, at 22–24.

17 *Id.* at 22.

18 ECF 11, at 6.

19 The government supports this proposition with a string of Eleventh Circuit cases deriving from the Supreme Court decision in *Brady v. United States*, 397 U.S. 742 (1970). ECF 12, at 19–20. Noble argues that *Brady* and its Eleventh Circuit progeny are not factually or procedurally analogous, ECF 13, at 8–9, and the Court agrees. Factually, in each of the cases cited by the government, the defendant under oath in open court made admissions sufficient to convict *regardless of any subsequent change in law*; not so here. And procedurally, none of the government's cases define the scope of a district court's discretion to *grant* a Rule 11(d)(2)(B) motion to withdraw. The government's cases do not control the present outcome. Nevertheless, they *do* control the Court's analysis under the second *Buckles* factor.

*Buckles* is clear, however, that courts look not only to its enumerated factors but also to the "totality of circumstances." Thus, courts must determine, not only which direction the *Buckles* factors point, but also how strongly they point and how heavily they weigh, given all the relevant information. And the circumstances here are very different from *Buckles*, in which the defendant failed to appear at sentencing, was arrested nearly three years later in another state, and claimed that he had falsely admitted guilt during his plea hearing due to some combination of drugs and duress. *Buckles*, 843 F.2d at 470–71. Here, by contrast, Noble moved to withdraw three weeks after *Dubin* cast doubt on the legitimacy of his conviction, and less than six weeks from the date of the plea hearing, without challenging the factual admissions he made under oath.

According to *Buckles*, among the important unenumerated factors that courts must consider on a motion to withdraw is timing. The more time separates the plea and the motion, the more "substantial the reasons" must be for withdrawal. *Id.* at 473. Here, where the time interval is short, the Court can be more lenient. The timing of Noble's motion also mitigates prejudice to the government—the fourth *Buckles* factor—because Noble's filing put the government on notice as to the possibility of withdrawal less than six weeks after the plea hearing. Timing thus weighs in favor of withdrawal.

Another factor weighing in favor of withdrawal is the Court's responsibility to "determine whether the conduct which the defendant admits constitutes the offense to which the defendant has pleaded guilty." *Lopez*, 907 F.2d at 1100. As the government points out, *Lopez* stands for the "uncontroversial proposition[]"[20] that Rule 11 exists to protect a defendant "who mistakenly believes that his conduct constitutes the criminal offense to which he is pleading," *id.*—in other words, who would otherwise plead guilty to a crime that he did not commit.[21] And according to *Dubin*, at least as undersigned understands it, the conduct to which Noble admitted at his plea hearing does not constitute the criminal offense to which he pleaded. In other words, Noble has pleaded guilty to a crime he did not commit, based of course on the factual basis provided by the government thus far.

Rule 11's purpose mitigates the extent to which the availability of counsel and the knowing and voluntary nature of Noble's plea—the first and second *Buckles* factors—weigh against withdrawal. These considerations are closely entwined with Rule 11's purpose of protecting defendants against unreasonable guilty pleas. That purpose remains compelling to this Court even after the plea hearing has occurred. Rule 11's purpose also mitigates any burden on this Court—

---

20 ECF 12, at 20.

21 *Id.*

the third *Buckles* factor—which does not consider it an unreasonable use of judicial resources to hit the pause and reset button at this juncture.

Thus, to the extent that the *Buckles* factors favor the government, their weight is mitigated under the circumstances of this case. Meanwhile, factors that the Court considers highly relevant—the timing of Noble's motion, the purpose of Rule 11—weigh heavily in Noble's favor. So, too, does the text of Rule 11(d)(2)(B): to find that it is "fair and just" to sentence Noble for a crime he may not have committed would rob those words of their recognizable meaning. Construing Rule 11(d)(2)(B) liberally, the Court finds that a fair and just reason exists under the totality of the circumstances for Noble to withdraw his plea of guilty to aggravated identity theft.

## III. CONCLUSION

Noble's motion to withdraw his plea of guilty to aggravated identity theft [ECF 11] is **GRANTED**. Counsel for Noble is ordered, within 3 days of this Order, to file an entry of appearance in the original indicted case, 22-cr-343-SDG-JKL-2.[22]

---

[22] As the government's brief points out, Noble's agreement to plead guilty to the two counts in the criminal information was, in effect, a contract with the government. ECF 12, at 24; *see King v. United States*, 41 F.4th 1363, 1367 (11th Cir. 2022). By withdrawing his plea of guilty as to the second of those two counts, Noble has breached the plea agreement. The government can accordingly dismiss the two-count criminal information and continue prosecuting Noble under the original indictment. Alternatively, of course, the parties are free to negotiate a revised plea agreement.

The parties are further ordered to file any pretrial motions, including motions in limine, no later than February 6, 2024, or file a motion to continue said deadline as soon as practicable.

**SO ORDERED** this 23rd day of January, 2024.

Steven D. Grimberg
United States District Judge